

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110787 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Honorable Daniel G. Pelikan |
| JESSE M. JANSEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 24, 2023 |

### Introduction

Jesse M. Jansen ("Jansen") appeals from the trial court's judgment following jury convictions on domestic assault in the fourth degree and child abuse. Jansen raises two points on appeal challenging his child-abuse conviction. In Point One, Jansen contends the trial court erred in denying his motion for judgment of acquittal because the State failed to adduce any evidence that Jansen was eighteen years of age or older, an essential element of child abuse. Point Two asserts the trial court plainly erred in failing to instruct sua sponte the jury on justified force by a person entrusted with the care and supervision of a minor. Because the jury observed Jansen in the courtroom and the State put forth sufficient circumstantial evidence from which the jury could reasonably infer Jansen was over the age of eighteen, we find the trial court did not err in denying Jansen's acquittal motion, and we deny Point One. As to the jury instruction, because Jansen did not meet his burden of injecting the issue of entrustment into the case, the trial court

did not plainly err in failing to provide sua sponte a justification instruction, and we deny Point Two. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

This case arises from an incident in St. Charles County on June 5, 2021. Jansen, his girlfriend ("E.B."), and their children spent the day at a waterpark with numerous extended family members, including E.B.'s nephew ("D.B."). At or around 7:00 pm, Jansen drove his car from the waterpark back to his home in O'Fallon. E.B. was in the passenger seat and three children were in the back. At least one other car carried the remaining family members back to Jansen's home.

On the drive, Jansen became very upset and "deregulated." He drove excessively over the speed limit, and E.B. suspected he was having a "mental health crisis." Upon arriving home, Jansen parked his car in the driveway and got out. E.B.—who is earning a graduate degree in mental health counseling—attempted to "de-escalat[e]" Jansen by forcing him back into the car. E.B. wanted to take Jansen on a drive to "bring him down" or seek psychiatric care, but Jansen would not get back in. E.B. and Jansen engaged in a "shoving match" on the driveway. According to eyewitnesses, Jansen slammed E.B.'s head against the garage door multiple times, although E.B. testified this did not happen.

D.B. saw the encounter between Jansen and E.B. and approached to separate them. Other teenage cousins rushed out alongside D.B. to help. At the time, D.B. was fourteen years old and had a slight frame. As D.B. attempted to enter the melee, Jansen picked him up, raised him to shoulder level, and then threw him onto the pavement. Eyewitnesses described that Jansen forcefully slammed D.B. to the ground with an overhead throw. D.B. landed in the middle of the street. While D.B. lay on the ground, Jansen approached and kicked him multiple times in the side, as if Jansen was trying to "kick a soccer ball or a field goal." Jansen then returned to his

2

car and drove away.  Neighbors observed the encounter from their driveways and windows, and at least one neighbor called 911.

The State charged Jansen with abuse or neglect of a child (a Class D felony) and domestic assault in the fourth degree (a Class A misdemeanor).  The case proceeded to a jury trial in March 2022.  The State called as witnesses three adult neighbors who had observed the incident.  Each neighbor made an in-court identification of Jansen.  One neighbor testified that she met Jansen and E.B. in early 2020 when they moved into the neighborhood and began renting their home.  The State also called one of the responding officers, Officer J.E.  The State subpoenaed D.B., but he did not appear.

Jansen did not testify on his own behalf, and he called E.B. as his sole witness.  E.B. stated that she and Jansen had dated for seven years and had three children together.  She also testified that she and Jansen are often asked to take care of young family members for extended periods, stating:

> So at our house we basically have like all my cousins at any given time.  I'm one of like [sixty] plus first cousins, so we have a lot of the older cousins.  Whenever my aunts and uncles need a break, I'll take the little ones too.  When [Jansen's] sister needs a break, we get the little baby for like weeks or months depending on what she needs.

E.B. also testified that she and Jansen have been "appointed by the State to take care" of her cousins, around "nine additional children for three months."

The State did not elicit testimony as to Jansen's age nor produce documents displaying Jansen's birthdate.[1]  Throughout the trial, attorneys and witnesses referred to Jansen as a "male,"

---

[1] The State indicates in its appellate brief that Jansen was thirty-one years old at the time of the offense and thirty-two years old at trial.  However, we may not consider facts outside the record on appeal.  See Mo. R. Civ. P. Rule 84.04(c)–(h) (providing what may be included in the statement of facts and appendix, neither of which authorizes the inclusion of evidence outside the record); State v. Patrick, 566 S.W.3d 245, 251 (Mo. App. W.D. 2019) (quotation omitted) ("Appellate courts generally do not consider evidence outside the record on appeal.").

"man," "adult male," or a "gentleman." Three times, witnesses categorized Jansen as one among the many "other adult[s]" present that day. In contrast, witnesses referred to D.B. as a "small boy," a "tiny child," and a "kid."

At the close of evidence, the trial court held a jury instruction conference. Jansen did not request that the trial court give Missouri Approved Instructions-Criminal ("MAI-CR") 4th (2022) 406.20, which instructs the jury on the justified use of force by a person entrusted with the care and supervision of a minor. Jansen raised no objections to the State's proffered MAI-CR 4th pattern instructions.

In closing argument, the State reviewed the elements of child abuse, including the following: "And the next element, the Defendant was [eighteen] years of age or older. That's a given too. Very simple." Jansen raised no objection.

The jury found Jansen guilty on both counts. The trial court sentenced Jansen to one year in jail on the child-abuse count and sixty days in jail on the domestic-assault count, with the sentences to run concurrently. This appeal follows.

Points on Appeal

Jansen raises two points on appeal challenging his child-abuse conviction. Point One argues the trial court erred in overruling Jansen's motion for judgment of acquittal on abuse of a child because the State failed to present sufficient evidence that Jansen was eighteen years of age or older. Point Two asserts the trial court plainly erred in failing to instruct sua sponte the jury on justified use of force by a person entrusted with the care and supervision of a minor because there was sufficient evidence to inject the issue that Jansen used force against D.B. to promote D.B.'s welfare. A finding that Jansen's use of force was justified would have provided a complete defense to the child-abuse charge.

4

<u>Discussion</u>

**I.       Point One—Sufficiency of the Evidence**

  A.  <u>Standard of Review</u>

Jansen concedes he raises his challenge to the sufficiency of the evidence for the first time on appeal.  However, a defendant's claim that there was insufficient evidence to sustain his conviction is preserved for review even if it was not raised before the trial court.  <u>State v. Claycomb</u>, 470 S.W.3d 358, 361 (Mo. banc 2015); <u>see</u> Rule 29.11(d)(3).[2]  We review all challenges to the sufficiency of the evidence on their merits.  <u>Claycomb</u>, 470 S.W.3d at 362.  We will affirm a defendant's conviction so long as "there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty."  <u>State v. Latall</u>, 271 S.W.3d 561, 566 (Mo. banc 2008).  We give "great deference" to the trier of fact.  <u>State v. Nash</u>, 339 S.W.3d 500, 509 (Mo. banc 2011) (quotation omitted).  Our task is not to reweigh the evidence; rather, we "accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences."  <u>Latall</u>, 271 S.W.3d at 566 (quotation omitted).

 "An 'inference' is a conclusion drawn by reason from facts established by proof."  <u>State v. Kinsella</u>, 578 S.W.3d 802, 815 (Mo. App. E.D. 2019) (quotation omitted).  "Reasonable inferences can be drawn from both direct and circumstantial evidence, and circumstantial evidence alone can be sufficient to support a conviction."  <u>State v. Peeler</u>, 603 S.W.3d 917, 920 (Mo. App. E.D. 2020) (quotation omitted); <u>see also</u> <u>State v. Mueller</u>, 568 S.W.3d 62, 66 (Mo. App. S.D. 2019) (noting that circumstantial evidence is given the same weight as direct evidence when reviewing for sufficiency).  "But, to be sufficient, the circumstantial evidence still must

---

[2] All Rule references are to Mo. R. Crim. P. (2021), unless otherwise noted.

5

give 'rise to a *logical* inference' that a fact exists, not a speculative inference." State v. Lehman, 617 S.W.3d 843, 848 (Mo. banc 2021) (quotation omitted). It is well-established that "unreasonable, speculative, or forced inferences" cannot support a verdict. Peeler, 603 S.W.3d at 920–21 (quoting State v. Lammers, 479 S.W.3d 624, 632 (Mo. banc 2016)).

B.      Analysis

Section 568.060[3] governs felony child abuse and provides:

A person commits the offense of abuse or neglect of a child if such person knowingly causes a child who is less than eighteen years of age:

(1) To suffer physical or mental injury as a result of abuse or neglect; or
(2) To be placed in a situation in which the child may suffer physical or mental injury as the result of abuse or neglect.

Section 568.060.2; see also State v. Ashcraft, 530 S.W.3d 579, 585 (Mo. App. E.D. 2017). The same statute defines "abuse" as "the infliction of physical, sexual, or mental injury against a child by any person eighteen years of age or older." Section 568.060.1(1).

The State must prove every element of an offense beyond a reasonable doubt. State v. Seeler, 316 S.W.3d 920, 925 (Mo. banc 2010). Given the definition of "abuse," Jansen argues that an element of child abuse under Section 568.060.2 is that the defendant must be eighteen years of age or older at the time of the alleged offense. "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment" and read the portions "in context to harmonize all of the statute's provisions." Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc., 533 S.W.3d 720, 724 (Mo. banc 2017) (quotation omitted). The legislature added the definition of "abuse" to Section 568.060 in 2012, and we must read that provision in harmony with the enumerated elements of child abuse. See Section 568.060.1(1), RSMo (Cum. Supp. 2012). Therefore, to sustain a conviction for child abuse under Section 568.060.2, the

---

[3] All Section references are to RSMo (2016), unless otherwise noted.

State has the burden to prove beyond a reasonable doubt that (1) the defendant was eighteen years of age or older when he or she (2) knowingly (3) inflicted physical, sexual, or mental injury upon a victim (4) who was under the age of eighteen. See Section 568.060.2.

Here, Jansen focuses solely on the sufficiency of the evidence required to support a finding that he was eighteen years of age or older. Jansen first argues the State failed to adduce any *direct* evidence of Jansen's age, such as a birth certificate or direct testimony from any witness. In light of the fact that he did not testify in his own defense, Jansen reasons there was insufficient evidence from which the jury could reasonably infer his age at the time of the offense. Jansen next contends the State further failed to adduce sufficient circumstantial evidence of his age. Given the testimony about Jansen driving home from the waterpark, Jansen concludes that the most the jury reasonably could infer is that he was of legal driving age, but not that he was eighteen years or older.

The State concedes that it failed to adduce direct evidence of Jansen's age. Indeed, the only direct mention of Jansen's age came in the State's closing argument, and "[c]losing argument by the attorneys is not evidence to be considered by the jury." Johnson v. State, 406 S.W.3d 892, 906 (Mo. banc 2013). However, the State proposes that jurors could infer Jansen's age based on their in-court observations and that such observations alone were sufficient to prove his age. Jansen disagrees, arguing jurors may not speculate as to incriminating facts or inferences from non-testifying parties, particularly criminal defendants. As we have found no other Missouri cases on the issue of what a juror may infer regarding age from in-court observations of a non-testifying defendant, we treat this as a matter of first impression.

Missouri law recognizes that jurors may make reasonable inferences about age from in-court observations of testifying witnesses. State v. Farr, 611 S.W.3d 878, 883 (Mo. App. S.D.

7

2020). However, the State's reliance on Farr only goes so far. In Farr, the ages of the victims were at issue, and both victims testified as to their birthdates. Id. Farr's conclusion that jurors may rely on in-court observations was specifically oriented toward a juror's right to decide whether to believe the victims' proffered testimonies about their ages. See id. Similarly, in Cima v. Fansler, 345 S.W.3d 875, 879 (Mo. App. W.D. 2011), the court noted that in a bench-tried hearing where the respondent is "present in the courtroom . . . the [circuit] court was able to observe whether [the respondent] appeared to be over the age of eighteen." Like Farr, there the circuit court had access to records displaying the respondent's birthdate and indicating that she was over the age of eighteen. Id. at 878–79. Therefore, neither Farr nor Cima is determinative because neither case addresses the issue of jurors relying on their observations of a non-testifying defendant where no direct evidence is adduced about the defendant's date of birth.

The State alternatively suggests that a jury's in-court observations of Jansen *plus* other circumstantial evidence constituted sufficient evidence from which jurors could reasonably infer Jansen was eighteen years of age or older. See Lehman, 617 S.W.3d at 848; Peeler, 603 S.W.3d at 920. In particular, the State argues that the neighbors' testimonies that Jansen had three children created a reasonable inference that Jansen was over the age of eighteen.

Given the lack of Missouri jurisprudence on the permissible inferences jurors may draw from the in-court appearance of a non-testifying defendant, we consider approaches from other jurisdictions. We find many jurisdictions have adopted the State's combination approach that a jury may infer age from observing the appearance of a non-testifying defendant so long as the State presents additional circumstantial evidence of the defendant's age. See, e.g., State v. McCulloch, 742 N.W.2d 727, 730–31 (Neb. 2007) ("[T]he defendant's physical appearance alone is not sufficient to prove the defendant is of a certain age, but it may be considered as

8

evidence of age when combined with other circumstantial evidence to support an inference that the defendant is of a sufficient age."); Barnett v. State, 488 So.2d 24, 25 (Ala. Crim. App. 1986) ("It is generally held, however, that some additional proof of the defendant's age must be presented in conjunction with his physical appearance. . . . This additional proof may be in the form of circumstantial evidence and need not be, in and of itself, conclusive of the defendant's age."); State v. Richey, 298 S.E.2d 879, 888 (W. Va. 1982) ("We conclude that where the exact age is not required to be proved, the defendant's physical appearance may be considered by the jury in determining age but that there must be some additional evidence suggesting the defendant's age."); Commonwealth v. Miller, 657 A.2d 946, 947–48 (Pa. Super. Ct. 1995) (upholding a verdict where the defendant was identified in court, the jury could observe the defendant, and there was circumstantial evidence that the defendant had children from a previous marriage).

The combination approach upholds two fundamental principles of criminal law. First, it creates a record for appeal. "Without additional [circumstantial] evidence of a defendant's age, a reviewing court would have nothing to review since, generally, the accused is not present for the appellate court's inspection." Barnett, 488 So.2d at 25 n.1. Second, requiring the State to affirmatively put forth some evidence of age preserves a defendant's "absolute, unqualified right to compel the State to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources." Williams v. Florida, 399 U.S. 78, 112 (1970) (Burger, J., concurring). As Missouri precedent makes clear, the State may not eschew its burden to prove each and every element of the charged offense. See Seeler, 316 S.W.3d at 925.

Accordingly, we hold that the State may prove a non-testifying defendant's age both through the jury's own observations of the defendant in court *plus* additional circumstantial evidence from which the jury may reasonably infer age.

Applying this standard, we find there was sufficient evidence from which the jury could reasonably infer that Jansen was eighteen years of age or older. See Section 568.060.1–2; Ashcraft, 530 S.W.3d at 585. Three witnesses made in-court identifications of Jansen as the person who picked up and threw D.B. The jurors knew Jansen's identity as the defendant and could observe him in the courtroom throughout the trial and reasonably draw conclusions from his general physical appearance about whether he was at least eighteen years old. See Farr, 611 S.W.3d at 883.

The jurors also heard additional circumstantial evidence from which they logically could infer Jansen was over eighteen years of age. See Lehman, 617 S.W.3d at 848. Witnesses offered testimony from which jurors reasonably could conclude Jansen had entered into the age of adulthood, principally:

- E.B.'s testimony that Jansen was driving her and three children home;

- E.B.'s testimony that she and Jansen had been in a romantic relationship for seven years;

- E.B.'s testimony that she and Jansen have three children together;

- A neighbor's testimony that Jansen and E.B. had begun renting their home, where they lived with their children, since early-2020, or roughly one and a half years before the incident;

- E.B.'s testimony that she and Jesse are repeatedly called on by other adults in their family to house and care for younger cousins, nieces, and nephews for "weeks or months" at a time, as well as her testimony that she and Jansen have been "appointed by the State" to care for "nine additional children for three months"; and

- E.B.'s testimony that she is enrolled in a graduate-level education program to earn a Master's degree.

10

In light of this testimony, we offer several observations. Had Jansen actually been younger than eighteen, he would have had to start dating E.B. at the age of ten years, thus the jury could reasonably infer that the two started their seven-year courtship after that time. Further, given E.B.'s testimony about she and Jansen acting as State-appointed child care providers, it would strain credulity for jurors to believe that the State would appoint someone under the age of eighteen with such substantive responsibilities. See Peeler, 603 S.W.3d at 920–21 (noting we do not grant unreasonable or forced inferences). Additionally, E.B.'s testimony that she is old enough to be enrolled in graduate-level education supports an inference that her long-term intimate partner is not a minor. See Barnett, 488 So.2d at 25 (finding relevant circumstantial evidence of age through the defendant's testimony that he had "grown-up" with a witness who was thirty-seven).

We also note that the State's witnesses repeatedly referred to Jansen as "a man" and categorized him as one among the "other adults" in the house. In contrast, D.B. was described by witnesses as a "boy" and a "tiny child." Two testimonial exchanges at trial are illustrative. In the first, a witness testified about Jansen kicking D.B.:

 Q. How many times did you see [Jansen] kick the boy?
 A. I would say three to four, is what I can recall.
 Q. And like little taps or –
 A. No. They were full-on kicks.
 Q. Adult male kicks?
 A. Yes. Yes.

In the second exchange, a witness likened the physical encounter between Jansen and D.B. as one between a "man" and a "kid":

 Q. [H]ow big or not big was the boy?
 A. I mean, I could tell that he was older than my kids, but my oldest just turned
  six, so – but he was not – he's not – it was clear that he wasn't an adult.
 Q. Sure. Sure. Appeared less than [eighteen]?
 A. Yes.

Q. Okay.
A. It was not a man and man fighting each other, so.
Q. This was a boy –
A. It was a kid.

Witness' consistency in characterizing Jansen as a "man" or "adult" is relevant circumstantial evidence from which the jury could infer Jansen's age. See State v. Putney, 473 S.W.3d 210, 220 (Mo. App. E.D. 2015) (quoting State v. McMullin, 136 S.W.3d 566, 572 n.5 (Mo. App. S.D. 2004)) (noting a valid inference "can fairly be drawn from the proven facts by reasonably intelligent minds").

Our role as the reviewing court is only to ascertain whether there were sufficient "reasonable inferences that support the verdict" while "ignor[ing] all contrary evidence and inferences." Claycomb, 470 S.W.3d at 362. We acknowledge the State's apparent minimal efforts to prove Jansen's age; however, we find the jury's verdict did not impermissibly rest on forced or speculative inferences. Rather, viewed in a light most favorable to the verdict, a reasonable jury could determine Jansen was an adult from Jansen's physical appearance in the courtroom, his role as a father of three and State-appointed caretaker, his status as a home-renter with his girlfriend, and his long relationship history with E.B. We therefore conclude there was sufficient circumstantial evidence from which the jury reasonably could have found Jansen was at least eighteen. See Latall, 271 S.W.3d at 566. Because the jury had an opportunity to view Jansen's physical appearance and heard various circumstantial evidence supporting an inference that he was at least eighteen years old, Point One is denied.

## II.     Point Two—Justification for Use of Force Instruction

### A.     Standard of Review

Jansen claims the trial court plainly erred by not giving an instruction sua sponte on the justified use of force by a person entrusted with the care and supervision of a minor. He

12

therefore reasons the jury was unable to consider if he had presented a complete defense to the child-abuse charge.

Preliminarily, Jansen acknowledges he did not preserve his claim of instructional error for review because he did not proffer a written instruction to the trial court as required by Rule 28.02. See Rule 28.02(b) (stating "counsel shall submit to the court instructions and verdict forms that the party requests to be given[;] [i]nstructions and verdict forms that a party requests shall be submitted in writing"); State v. Derenzy, 89 S.W.3d 472, 475 (Mo. banc 2002) (internal citation omitted) (noting a party's failure to submit a correct instruction renders a claim of error unpreserved). Because Jansen did not proffer a written justification jury instruction as required by Rule 28.02, he requests we exercise our discretion to review his claim for plain error.

"Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error[.]" State v. Minor, 648 S.W.3d 721, 731 (Mo. banc 2022) (quoting State v. Brandolese, 601 S.W.3d 519, 530 (Mo. banc 2020)). Rule 30.20 provides that we may in our discretion consider "plain errors affecting substantial rights" when "manifest injustice or miscarriage of justice has resulted therefrom." We conduct plain-error review in two steps. State v. Seay, 256 S.W.3d 197, 200 (Mo. App. E.D. 2008). First, we determine if the claim "facially establishes an error that is evident, obvious, and clear, and that affected substantial rights." Id. If such error occurred, "we proceed to the second step and consider whether manifest injustice will result if the error is left uncorrected." Id.

B.    Analysis

A trial court must submit a justification instruction whenever there is "sufficient evidence" to support it. Id. at 199 (internal citation omitted). However, the defendant has the burden of injecting the issue of justification. Id.; see also Section 563.061.6; MAI-CR 4th 406.20 Note on Use 2 ("The 'burden of injecting the issue' of the use of force by a person

13

entrusted with the care and supervision of a minor or incompetent is on the defendant."). Thus, a trial court is not required to provide a justification instruction sua sponte unless the defendant has put forth some evidence putting the matter at issue. Seay, 256 S.W.3d at 200. Even under plain-error review, we consider the evidence in the light most favorable to the defendant. State v. Kendrick, 550 S.W.3d 117, 118 (Mo. App. W.D. 2018) (citing State v. Bruner, 541 S.W.3d 529, 534 (Mo. banc 2018)).

MAI-CR 4th 406.20 requires the trial court to provide an instruction justifying the use of force by a person entrusted with the care and supervision of a minor (the "Entrustment Instruction") whenever there is evidence supporting the defense. In relevant part, the instruction provides:

> A (parent) (or) (guardian) (or) (person) entrusted with the care of and supervision of (a minor) (an incompetent) may use force when he reasonably believes that the force used is necessary to promote the welfare of such (minor) (incompetent) (.)

MAI-CR 4th 406.20(1). The Entrustment Instruction parallels Missouri's justification statute, Section 563.061.1, which provides in relevant part: "The use of physical force by an actor upon another person is justifiable when the actor is a parent, guardian or other person entrusted with the care and supervision of a minor or an incompetent person[.]"

Here, Jansen was required to inject evidence putting the Entrustment Instruction at issue, including that he was entrusted with the care and supervision of D.B. See Seay, 256 S.W.3d at 200; see also Section 563.061.6; MAI-CR 4th 406.20 Note on Use 2. The parties dispute whether Jansen injected evidence of entrustment to be entitled to the justification instruction.

The term "entrusted" is not defined by statute. "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." State v. Oliver, 293 S.W.3d 437, 446 (Mo. banc 2009). The dictionary defines the verb "entrust" as

14

follows: "(1): to confer a trust on; (2) to commit to another with confidence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 759 (2002). We have found that a defendant injected sufficient evidence to support issuing the Entrustment Instruction when the defendant testified that he was "acting as [the minor's] caretaker" generally, had "baby-sat for [the minor] for over three years prior to the incident," and had been babysitting the minor during the incident. Seay, 256 S.W.3d at 198–200.

Here, Jansen alleges that D.B. was in his and E.B.'s temporary care during the incident. The State counters that nothing in the record supports this allegation. We agree. Although E.B. broadly testified that she and Jansen are often asked to look after young children in the family, neither E.B. nor any other witness testified that D.B. was one of the children entrusted to their care at the time of the offense. See id. Nor did E.B. testify that she and Jansen were entrusted with the care of any other children, beyond their own, at that time. See id. In fact, the record more likely indicates that D.B. remained in the care and supervision of his father, who was on the premises during the incident. Therefore, even viewing the evidence in the light most favorable to Jansen, he has failed to meet his burden of injecting into the case any evidence that D.B. was entrusted to his care at the time of the offense. See Section 563.061.6; MAI-CR 4th 406.20 Note on Use 2. Accordingly, the trial court did not commit plain error in failing to issue sua sponte the Entrustment Instruction to the jury. Because we conclude that the trial court did not plainly err, we need not reach the second step of plain-error review and consider whether manifest injustice resulted.[4] See Seay, 256 S.W.3d at 199. Point Two is denied.

---

[4] As we have determined that Jansen failed to adduce sufficient evidence to inject the issue, we need not reach his allegation that the force was reasonable in light of his mental health crisis. Nor need we reach the merits of Jansen's claim—raised for the first time in the brief—that Jansen applied force to "promot[e] D.B.'s welfare in that throwing D.B. out of his way [was] in a bid to escape a fraught situation."

15

<u>Conclusion</u>

The judgment of the trial court is affirmed.


_____
KURT S. ODENWALD, Presiding Judge


Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.